IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
UNITED STATES OF AMERICA      :
                              :
         v.                   :       1:04CR251-1
                              :
DOUGLAS SCOTT PRUITT, JR.     :
```

FILED ✦
FEB 2 3 2005
IN THIS OFFICE
Clerk U. S. District Court
Greensboro, N. C.
By _____

### GOVERNMENT'S SENTENCING MEMORANDUM IN LIGHT OF BOOKER

The United States of America, by and through Anna Mills Wagoner, United States Attorney for the Middle District of North Carolina, respectfully submits this Sentencing Memorandum regarding defendant DANIEL JERRIS DAWKINS.

In United States v. Booker, 2005 WL 50108 (U.S. Jan. 12, 2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. C. 2531 (2004). The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury. As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. 3553(b)(11), thus declaring the Guidelines "effectively advisory." Booker, 2005 WL 50108, at *16. This ruling results in a system in which the sentencing court, while informed by the Guidelines, may impose any sentence within the statutory maximum penalty for the offense of conviction. The sentence will be

subject to review by the Court of Appeals for "reasonableness." Id. at *24.

In the wake of Booker, this Court must make a correct calculation under the existing Sentencing Guidelines, and then consider the final guideline calculation when determining the sentence to be imposed. Justice Breyer's majority opinion directed that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Id. at *27.

The Fourth Circuit in the case of United States v. Hughes, 2005 WL 147059 (4th Cir. Jan. 24, 2005)(No. 03-4173), interprets Booker to require a district court to first, after making the appropriate findings of fact, calculate the range prescribed by the guidelines. The district court is then to consider that guideline range as well as other relevant factors set forth in 18 U.S.C. § 3553(a) before imposing the sentence. The district courts are directed to explain their reasons if the courts impose sentences outside the guideline ranges. Hughes, 2005 WL 147059, at *9.

The position of the United States is that, absent highly unusual circumstances, the sentence in a criminal case should fall within the guideline range as determined by the Court. This view is shared by Congress and the Supreme Court. As every Supreme Court justice in the various opinions in Booker

recognized, the Guidelines carry out the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible and be based on the offender's actual conduct and history. See, e.g., id. at \*21 (majority opinion of Breyer, J.)("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at \*19(same)("Congress' basic statutory goal -- a system that diminishes sentencing disparity - - depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at \*42 (dissenting opinion of Stevens, J.)("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at \*47 (dissenting opinion of Scalia, J.)("the primary objective of the Act was to reduce sentencing disparity.").

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of 15 years of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address all of the considerations relevant to sentencing, as articulated in 18 U.S.C. § 3553(a), such as "the nature and circumstances of the

3

offense and the history and characteristics of the defendant;"
"the need for the sentence imposed -- (A) to reflect the
seriousness of the offense, to promote respect for the law, and
to provide just punishment for the offense; (B) to afford
adequate deterrence to criminal conduct; (C) to protect the
public from further crimes of the defendant; and (D) to provide
the defendant with needed educational or vocational training,
medical care, or other correctional treatment in the most
effective manner;" and "the need to a void unwarranted sentence
disparities among defendants with similar records who have been
found guilty of similar conduct . . . ."

Thus, fidelity to the Guidelines best accomplishes the
purpose of fair and consistent sentencing, and should occur
absent unusual circumstances. The government commends to the
Court's attention the scholarly opinion in United States v.
Wilson, 2005 WL 78552 (D. Utah Jan. 13, 2005), which shared this
conclusion. In his assessment in Wilson, on the day after Booker
was decided, Judge Cassell explained at length the reasons
supporting this view. As he stated, the Guidelines represent the
product of an expert commission, which has studied the sentencing
process at great length, under the specific mandate of Congress
to fashion recommended sentences which carry out the purpose
defined by Congress. The resulting Guidelines, Wilson held,
plainly reflect the public's will, as expressed by their

4

democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to Congressional preference, <u>Wilson</u> further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." <u>Id.</u> at *1.

Accordingly, a sentence within the guideline range is presumptively reasonable, and accommodates the Congressional purpose, affirmed by the Supreme Court, of obtaining fair sentences which are uniform to the extent possible. The government anticipates that only sentences outside the guideline range will be subject to appellate scrutiny for reasonableness in light of the Congressional mandate.

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant at the high end of the Guidelines range calculated in the PSR.

This the 22nd day of February, 2005.

Respectfully submitted,

ANNA MILLS WAGONER
United States Attorney

*Lisa B. Boggs*

LISA B. BOGGS
Assistant United States Attorney
NCSB #10635

P. O. Box 1858
Greensboro, NC 27402

336\333-5351

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Government's Sentencing Memorandum in Light of Booker was served upon the person hereinafter named, either personally or by placing the same in the United States Mail, this the 23nd day of February, 2005, addressed as follows:

Addressee:

Gregory Davis
Assistant Federal Public Defender

United States Probation Office

Carolyn H. Loye
Legal Assistant
United States Attorney's Office

P. O. Box 1858
Greensboro, NC   27402
336/333-5351

7